IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAULETTE WILLIAMS,

    Plaintiff,

              v.

ETHICON, INC. and JOHNSON & JOHNSON,

    Defendants.

Civil Action No.
1:20-cv-04341-SDG

**OPINION AND ORDER**

This matter is before the Court on a motion for partial summary judgment

[ECF 43] and motion to limit or exclude the case-specific testimony of Plaintiff

Paulette Williams's expert Bruce Rosenzweig, M.D. [ECF 45] filed by Defendants

Ethicon, Inc. and Johnson & Johnson. For the following reasons, both motions are

**GRANTED IN PART** and **DENIED IN PART**.

I.    **Background**

Defendants are corporations that — among other lines of business — design,

market, and sell medical devices.[1] On January 21, 2011, Dr. Joyce Lowman

implanted Williams with a tension-free vaginal tape (TVT), a mesh product

manufactured by Ethicon, at Atlanta Outpatient Surgery Center in Atlanta,

---

[1]    ECF 53-1, at 2 (Long Form Complaint).

Georgia.[2] Following the implantation, Williams alleges she experienced pain, bleeding, infection, urinary problems, and other related medical issues.[3] Due to these allegedly mesh-related complications, Williams treated with Dr. Bruce Green, who excised a portion of Williams's TVT.[4] Nonetheless, Williams continued to experience pain and urinary problems.[5]

On November 6, 2015, Williams initiated this action by filing her Short Form Complaint directly into a multi-district litigation (MDL) pending before United States District Court Judge Joseph R. Goodwin of the Southern District of West Virginia.[6] The MDL contained hundreds-of-thousands of cases involving similar claims of harm resulting from the implantation of various polypropylene-based mesh products, including TVT. On November 10, 2017, the case was placed on an inactive docket.[7] On August 27, 2018, Judge Goodwin placed the case on "Wave 9" and established deadlines for completing fact and expert discovery.[8] While still

---

[2]    ECF 44, ¶ 1.

[3]    ECF 20.

[4]    *Id. See also* ECF 45-2, at 10–11 (Expert Report of Dr. Bruce Rosenzweig).

[5]    ECF 45-2, at 8–12.

[6]    ECF 1.

[7]    ECF 7.

[8]    ECF 23.

pending in the MDL, Defendants filed the instant motions for partial summary judgment and to exclude or limit the testimony of Dr. Bruce Rosenzweig.[9] On October 9, 2020, Judge Goodwin ordered the transfer of the case to this Court.[10] Defendants' motions are now ripe for adjudication.

## II.      Motion for Partial Summary Judgment

In her Short Form Complaint, Williams incorporated 17 claims for: negligence (Count I); strict liability–manufacturing defect (Count II); strict liability–failure to warn (Count III); strict liability–defective product (Count IV); strict liability–design defect (Count V); common law fraud (Count VI); fraudulent concealment (Count VII); constructive fraud (Count VIII); negligent misrepresentation (Count IX); negligent infliction of emotional distress (Count X); breach of express warranty (Count XI); breach of implied warranty (Count XII); violation of consumer protection laws (Count XIII); gross negligence (Count XIV); unjust enrichment (Count XV); punitive damages (Count XVII);[11] and

---

[9]    ECF 43; ECF 45.

[10]    ECF 50.

[11]    The Court follows the Count numbering format employed for each Count in the Short Form Complaint; thus, since Williams did not assert the claim set forth in Count XVI, that numeral is skipped.

discovery rule and tolling (Count XVIII).[12] Defendants request summary judgment on all of Williams's claims except Counts V, XVII, and XVIII. In response, Williams concedes her claims in Counts II, IV, VIII, X, XI, XII, and XV are subject to dismissal. Defendants are therefore entitled to summary judgment as to those claims. The only remaining claims the Court must address are Counts I, III, VI, VII, IX, XIII, and XIV.

### a.   Legal standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment has the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the non-movant must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. A fact is considered "material" only if it may "affect the outcome of the suit under the governing law." *BBX Cap. v. Fed.*

---

[12]   ECF 1.

*Deposit Ins. Corp.*, 956 F.3d 1304, 1314 (11th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *BBX Cap.*, 956 F.3d at 1314 (citing *Anderson*, 477 U.S. at 248) (punctuation omitted).

In opposing a motion for summary judgment, the non-movant "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Sears v. Roberts*, 922 F.3d 1199, 1207 (11th Cir. 2019). If the non-movant relies on evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015). But the Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Sears*, 922 F.3d at 1205 (citing *Anderson*, 477 U.S. at 249). The Court must view the evidence in a "light most favorable to the party opposing summary judgment" and "draw[ ] all justifiable inferences in the opposing party's favor." *Rogers v. Mentor Corp.*, 682 F. App'x 701, 708 (11th Cir. 2017). *See also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (quoting *Anderson*, 477 U.S. at 255).

### b.    Discussion

### i.    Williams's claims premised on a failure to warn theory

Defendants argue they are entitled to summary judgment on Williams's claims premised on a failure to warn. "In standard products liability cases premised on a failure to warn, Georgia law insists that a plaintiff show that the defendant had a duty to warn, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010) (citing *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1362 (N.D. Ga. 1999)).[13] Regarding causation, "[u]nder the learned intermediary doctrine, the manufacturer of a prescription drug or medical device does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer." *McCombs v. Synthes (U.S.A.)*, 277 Ga. 252, 253 (2003). *See also Hubbard v. Bayer HealthCare Pharm., Inc.*, 407 F. Supp. 3d 1317, 1321 (N.D. Ga. 2019); *Presto v. Sandoz Pharm. Corp.*, 226 Ga. App. 547, 548 (1997). "Although Georgia's learned intermediary rule has its roots in prescription drugs, the Georgia courts repeatedly have applied that rule to prescription medical devices." *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1279 (11th Cir.

---

[13]    The parties agree that Georgia state law governs Williams's claims.

2002). *See also Cessna v. Ethicon, Inc.*, No. 7:20-cv-37 (WLS), 2020 WL 2121392, at *4 (M.D. Ga. Apr. 2, 2020) ("To prove that Defendants' failure to warn was the cause of Plaintiffs' injuries here, Plaintiffs must show that Dr. Quinif would not have prescribed and implanted Prolift and TVT-O had Defendants provided the warnings Plaintiffs allege were missing."); *Cisson v. C.R. Bard, Inc.*, No. 2:11-cv-00195, 2013 WL 5700513, at *8 (S.D.W. Va. Oct. 18, 2013) ("Proving causation [under Georgia law] consists of . . . the plaintiffs [ ] show[ing] that Dr. Raybon would not have implanted the Avaulta Plus if Bard had provided the warnings the plaintiffs allege should have been provided.").

Here, the Court finds the learned intermediary doctrine bars Williams's failure to warn claims. First, Dr. Lowman expressly testified that she did not read the warnings or Instructions for Use (IFU) provided for the TVT before implanting Williams.[14] Dr. Lowman's failure to read the warnings—even if their substance was somehow inadequate—prevents Williams from establishing causation. *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, 711 F. Supp. 2d 1348, 1378–79 (M.D. Ga. 2010) ("In general, causation on a failure to warn claim cannot be established unless a plaintiff's doctor did read the product warning or rely on

---

[14]    ECF 43-2 (Lowman Dep. Tr. 65:8–22).

other statements by the product's manufacturer."); *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74, 75 (1995) ("[F]ailure to read instructions or printed warnings will prevent a plaintiff from recovering on a claim grounded on failure to provide adequate warning of the product's potential risk."). *See also Lewis v. Johnson & Johnson*, 601 F. App'x 205, 208 (4th Cir. 2015) (applying Texas law and holding "[w]hen a physician relies on her own experience and examination of a patient in deciding to prescribe a device, and not on the device's warning, the warning is not the cause of the patient's injury").

Second, even though she did not read the warnings, Dr. Lowman testified that prior to Williams's surgery she was independently aware of the risks posed by TVT.[15] Notwithstanding these risks—and with knowledge of the warnings Williams claims Defendants should have provided—Dr. Lowman affirmatively stated that she would still follow the same course of treatment and perform the TVT surgery.[16] This unrebutted testimony likewise bars Williams from establishing that Defendants proximately caused her injuries. *Brown v. Roche Labs., Inc.*, No. 1:06-cv-3074-JEC, 2013 WL 2457950, at *8 (N.D. Ga. June 6, 2013)

---

[15]   ECF 43-2 (Lowman Dep. Tr. 132:6–21).

[16]   *Id.* at 9:22–24, 15:21–24, 40:9–43:14, 45:16–18, 47:20–48:1, 50:13–15, 67:1–12, 155:13–156:8, 159:24–160:4, 161:18–162:2.

("[W]here the doctor has actual knowledge of the risk and would have taken the same course of action even with the warning that plaintiff claims should have been provided, the learned intermediary doctrine bars recovery."). *See also Ellis*, 311 F.3d at 1283 n.8. Williams fails to present any evidence creating a triable issue of fact on this point. Therefore, Defendants are entitled to summary judgment on Williams's claims expressly premised on a failure to warn: Count I (negligence) and Count III (strict liability–failure to warn).

In the same vein, Defendants argue they are entitled to summary judgment on Williams's claims for fraud, fraudulent concealment, negligent misrepresentation, and violation of consumer protection laws because they too are premised on a failure to warn. The Court does not agree. These claims contain distinct elements—and require separate proof—than negligence and products liability claims. Defendants do not point to a single case granting summary judgment on such claims based on the learned intermediary doctrine. Viewing the Master Complaint, these causes of action are also underpinned by separate factual allegations. Likewise, Defendants do not present evidence showing (1) they are entitled to judgment as a matter of law, or (2) that there is an absence of disputed facts. At bottom, the Court does not find it proper to roll up Williams's fraud-based

tort claims into her failure to warn theories. Defendants are not entitled to summary judgment on Counts VI, VII, IX, and XIII.

### ii. Williams's claims premised on alleged design defects.

Defendants seek the dismissal of Williams's claims for negligence (to the extent it is premised on alleged design defects) and gross negligence because the claims should be merged with Williams's strict liability design defect claim. According to Defendants, "general negligence is a theory of liability in a products liability claim. It is not a stand-alone cause of action."[17] Ostensibly, Defendants are seeking to prevent Williams from obtaining double recovery for the same legal theory. Recently, in *May v. Ethicon, Inc.*, another court in this district faced this precise issue, summarized the relevant law, and stated:

> The demarcation line between negligent design defect claims and strict liability design defect claims is not entirely clear under Georgia law. Georgia law has long recognized the distinction between negligence and strict liability theories of liability, and the Supreme Court of Georgia has declined to conclude definitively that the two theories merge in design defect cases. Nevertheless, Georgia courts apply the same risk-utility analysis to both types of claims, which requires plaintiffs to prove that the allegedly defective product poses an unreasonable risk of harm to the consumer. Because the same analysis applies to both, some courts have elected

---

[17]   ECF 44, at 7 (citing *Grieco v. Tecumseh Prods. Co.*, 2013 WL 5755436, at *5 (S.D. Ga. Oct. 23, 2013)).

> to treat separately pleaded causes of action for negligent and strict liability design defects as one claim. The Court agrees with the reasoning in these decisions and will order the Plaintiffs to consolidate their design defect claim into a single claim in the Pretrial Order. The Court emphasizes, however, that its decision in no way narrows the scope of the issues to be litigated at trial.

No. 1:20-cv-322-TWT, 2020 WL 674357, at *3 (N.D. Ga. Feb. 11, 2020) (citations and punctuation omitted).

The Court finds this approach practical and persuasive. To be sure, there is no material difference between the facts and legal analysis underlying Williams's claims for negligence and strict lability with regard to a design defect. As such, Defendants are entitled to summary judgment on Count I. However, Williams is entitled to pursue her design defect claim to its full extent, which must be articulated in a single Count in the pretrial order.

Williams's claim for gross negligence raises a different issue. This is an independent cause of action under Georgia law. O.C.G.A. § 51-1-4. The statute defines gross negligence as the absence of "slight diligence," characterized as the "degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances." *Id*. A gross negligence claim contains separate elements—and requires different proof—than Williams's simple negligence claim. Recent Georgia decisions have rejected Defendants'

precise argument that a gross negligence claim is duplicative of a design defect products liability claim. *E.g.*, *Jones v. Ethicon, Inc.*, No. 7:20-cv-128 (HL), 2020 WL 5836555, at *7 (M.D. Ga. Sept. 30, 2020); *Cessna*, 2020 WL 2121392, at *11; *May*, 2020 WL 674357, at *4. Defendants have not otherwise argued that they are entitled to summary judgment based on the absence of disputed facts. Therefore, the Court finds Defendants are not entitled to summary judgment on Count XIV.

### iii.     Summary

Defendants' motion for summary judgment [ECF 43] is **GRANTED IN PART** and **DENIED IN PART**. Counts I–IV, VIII, X, XI, XII, XV are **DISMISSED** in their entirety. Williams may proceed on Counts V–VII, IX, XIII, XIV, XVII, and XVIII.

## III.    Motion to Limit or Exclude Testimony

Defendants request the Court limit or exclude expert testimony offered by Dr. Bruce Rosenzweig. Dr. Rosenzweig is Williams's general and case-specific causation expert. He is a pelvic surgeon and urogynecologist who has performed over 1,000 pelvic floor surgical procedures and over 350 surgeries dealing with complications related to synthetical mesh.[18] Dr. Rosenzweig has served as an

---

[18]    ECF 45-2 (Expert Report of Dr. Rosenzweig).

expert in numerous mesh-related cases.[19] In this and another related MDL, Judge Goodwin has expressly found that Dr. Rosenzweig is qualified to testify as to general causation issues related to TVT. *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-cv-4301, 2014 WL 186872, at *20 (S.D. W. Va. Jan. 15, 2014); *In re C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2018 WL 514753, at *3 (S.D. W. Va. Jan. 23, 2018). Defendants nonetheless challenge a substantial portion of Dr. Rosenzweig's case-specific testimony—specifically his opinions: (1) as to general causation; (2) that Williams would not have been injured had she undergone an alternative procedure; (3) as to the adequacy of the warning labels in the IFU for the TVT; (4) as to what Williams's implanting physician—Dr. Lowman—knew or did not know prior to Williams's surgery; (5) as to certain characteristics of TVT; (6) as to Williams's long-term prognosis; (7) to the extent he offers legal conclusions; and (8) as to Defendants' knowledge, state of mind, or corporate conduct. The Court addresses each challenge in turn.

   a.   **Legal standard**

   A witness may be qualified as an expert and testify as to his or her opinion on a matter if:

---

[19]   *Id.*

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court is required to act "as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury." *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1244 (11th Cir. 2018). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Expert testimony is admissible if it "rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). The Eleventh Circuit "employ[s] a rigorous three-part inquiry to review the admissibility of expert testimony under Rule 702" that requires the Court to consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 808 (11th Cir. 2017) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)). "The proponent of the expert testimony bears the burden of establishing that each of these criteria are satisfied." *Id.*

### b.   Discussion

#### i.   Defendants' general objections are meritless.

Defendants argue Dr. Rosenzweig's case-specific causation testimony should be excluded because he relies on his general causation reports and "much of Dr. Rosenzweig's Report consists of a recitation of his general opinions that are redundant of the points he makes in his General Reports, with no reference to the particular conditions or characteristics regarding Ms. Williams."[20] As noted above, Dr. Rosenzweig is well qualified to give expert testimony as to general causation issues involving TVT. Defendants expressly concede their argument is essentially reiterating their general objections in this case-specific motion. Judge Goodwin consistently found this precise tactic improper in the MDL. *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2327, 2017 WL 2214909, at *3 (S.D. W. Va. May 18, 2017); *Sacchetti v. Ethicon, Inc.*, 2016 U.S. Dist. LEXIS 172597, *6 (S.D. W. Va. Dec. 14, 2016). Defendants' motion is denied as to this issue.

---

[20]   ECF 45, at 3.

### ii.   Dr. Rosenzweig's opinions as to alternative procedures.

Defendants argue Dr. Rosenzweig should not be permitted to testify as to the adequacy of alternative procedures to TVT. In his report, Dr. Rosenzweig opines:

> Safer alternative designs, rather than the TVT polypropylene mesh product, existed for this patient. I have experience with many of these safer alternative designs, and based on my experience and review of medical literature and other materials, it is my opinion that these alternative designs were safer and feasible for Ms. Williams. These safer alternative designs include:
>
> 1. the use of sutures, including delayed absorbable sutures like PDS, in a colpo-suspension procedure like the Burch;
>
> 2. autologous fascia sling;
>
> 3. an allograft sling such as Repliform; and
>
> 4. a sling with less polypropylene such as Ultrapro.
>
> These safer alternative designs were capable of preventing Ms. Williams' injuries and damages, as I have described in my report, that were a result of the specific design flaws of the TVT polypropylene . . . . If any of these safer alternative designs [had] been used for Ms. Williams, she would not have suffered the injuries I set forth in my report.[21]

---

[21]   ECF 45-2, at 18.

The first two items identified by Dr. Rosenzweig are alternative **surgical procedures**, not alternative products. Judge Goodwin has previously found that "opinions regarding *alternative procedures* are irrelevant to the question of whether a safer alternative *design* of a product exists." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2327, 2017 WL 1264620, at *3 (S.D. W. Va. Mar. 29, 2017) ("I agree with Ethicon that alternative procedures/surgeries do not inform the issue of whether an alternative design for a product exists.") (emphasis in original). *See also Mullins v. Johnson & Johnson*, 236 F. Supp. 3d 940, 942 (S.D. W. Va. 2017) ("I am convinced that an alternative, feasible design must be examined in the context of products—not surgeries or procedures."). The Court likewise finds that Dr. Rosenzweig's opinions as to these alternative procedures are not relevant here and would not be helpful to the jury.

The third and fourth items are alternative products. However, an allograft sling (such as Repliform) is not a **mesh** product.[22] The Court agrees with Defendants that evidence regarding a different product not involving mesh—the implantation of which would have required a different surgical procedure—is not

---

[22]   *See Messina v. Ethicon, Inc.*, No. 6:20-cv-1170-ORL-40LRH, 2020 WL 7419586, at *3 (M.D. Fla. Dec. 17, 2020); ALLOGRAFT, Stedmans Medical Dictionary (last updated Nov. 2014).

relevant to the existence of a safer alternative design for the mesh product at issue in this case. *See Walker v. Ethicon, Inc.*, No. 12-CV-1801, 2017 WL 2992301, at *2 (N.D. Ill. June 22, 2017) (collecting cases). But the fourth item is an alternative mesh product. Under Georgia law, "[o]ne factor consistently recognized as integral to the assessment of the utility of a design is the availability of alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design." *Banks v. ICI Ams., Inc.*, 264 Ga. 732, 735 (1994). As such, the Court believes Dr. Rosenzweig's testimony as to the availability and adequacy of this similar mesh product is relevant and would assist the trier of fact. Defendants' motion is granted in part and denied in part as to this issue.

### iii. Dr. Rosenzweig's opinions as to the adequacy of warnings are not relevant.

Defendants argue Dr. Rosenzweig should not be able to testify as to the adequacy of the warnings in the TVT's IFU because (1) he is not qualified on the subject, and (2) the opinions are not relevant in light of the direct testimony from Dr. Lowman. At the outset, Judge Goodwin has already expressly found that Dr. Rosenzweig is qualified to testify on these issues. *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 704 (S.D. W. Va. 2014). But the Court agrees with Defendants that the testimony is not relevant. As stated above, Williams cannot pursue her

claims premised on a failure to warn because she cannot establish proximate cause. This disputed testimony relates solely to a failure to warn. Therefore, Dr. Rosenzweig's opinions are not relevant to the surviving claims in this case. Defendants' motion is granted as to this issue.

### iv.   Dr. Rosenzweig's opinions as to Dr. Lowman's knowledge are not relevant.

Defendants argue Dr. Rosenzweig impermissibly speculates as to Dr. Lowman's state of mind regarding the risks involved with TVT implantation. Like the previous section—and as Williams acknowledges—the relevance of this testimony hinges on the Court's disposition of her failure to warn claims.[23] Because Defendants are entitled to summary judgment on those claims, Dr. Rosenzweig's testimony in this regard is not relevant to the surviving claims in this case. Therefore, Defendants' motion is granted as to this issue.

### v.   Dr. Rosenzweig's opinions as to certain characteristics of TVT are admissible.

Defendants argue Dr. Rosenzweig's testimony describing certain complications of the TVT are irrelevant and lack an evidentiary basis. Specifically, Defendants argue Dr. Rosenzweig's testimony is premised solely on speculation and conjecture because he has not physically examined Williams or

---

23   ECF 46, at 11.

her mesh implant. The Court does not agree. As stated, Dr. Rosenzweig is an experienced urogynecologist who has performed over 1,000 pelvic floor surgeries and 350 surgeries related to synthetic mesh products. Dr. Rosenzweig based his opinions on (1) Williams's medical records, (2) pertinent scientific literature, and (3) his experience in the field. Dr. Rosenzweig also considered and ruled out various alternatives. As noted by Judge Goodwin, "Dr. Rosenzweig's failure to physically examine [the patient] does not per se render his specific causation testimony unreliable, especially when he reached his opinions by studying the records of other physicians who examined the two women." *Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501, 565 (S.D. W. Va. 2014). *See also Priddy v. C.R. Bard, Inc.*, No. 2:13-cv-10318, 2018 WL 662500, at *2 (S.D.W. Va. Feb. 1, 2018). The Court also finds persuasive that other courts have recently rejected this precise argument. *E.g., Dorgan v. Ethicon, Inc.*, No. 4:20-00529-cv-RK, 2020 WL 5367062, at *3 (W.D. Mo. Sept. 8, 2020). Defendants' motion is denied as to this issue.

### *vi.* **Dr. Rosenzweig's testimony as to Williams's prognosis.**

Similarly, Defendants argue Dr. Rosenzweig should not be permitted to speculate as to Williams's future prognosis because he has not physically examined Williams. In his expert report, Dr. Rosenzweig states his opinion that "Ms. Williams will have continued and ongoing complications and need

additional medical treatments following implantation related to the permanent complications she suffered from the inadequacies and implantation of the TVT device."[24] Dr. Rosenzweig explicitly details some of Williams's future risks and symptoms.[25] The Court concludes Dr. Rosenzweig is well qualified to offer this testimony and that it would assist the jury. The testimony is not inherently speculative simply because Dr. Rosenzweig did not personally examine Williams. Any perceived deficiency with this testimony can be addressed through cross examination at trial. Defendants' motion is denied as to this issue.

> *vii.* **Dr. Rosenzweig's testimony to the extent it constitutes legal conclusions or relates to Defendants' knowledge, state of mind, or corporate conduct**

Defendants argue the Court must not permit Dr. Rosenzweig to (1) offer legal conclusions through the guise of expert testimony, or (2) opine as to Defendants' knowledge, state of mind, or corporate conduct. The Court agrees that these are not appropriate topics upon which Dr. Rosenzweig may testify. *See Huskey*, 29 F. Supp. 3d at 702–03 ("While an expert may testify as to a review of internal corporate documents solely for the purpose of explaining the basis for his or her opinions—assuming the opinions are otherwise admissible—Ethicon's

---

24   ECF 45-2, at 17.

25   *Id.*

knowledge, state of mind, or other matters related to corporate conduct and ethics are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury. Similarly, opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."). *See also Wegmann v. Ethicon, Inc.*, No. 4:20-cv-00704 JAR, 2020 WL 5814475, at *4–5 (E.D. Mo. Sept. 30, 2020); *In re C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2018 WL 4212409, at *3 (S.D. W. Va. Sept. 4, 2018). Defendants' motion is granted as to this issue.

## IV.    Conclusion

Defendants' partial motion for summary judgment [ECF 43] and motion to limit or exclude the case-specific testimony of Dr. Rosenzweig [ECF 45] are **GRANTED IN PART** and **DENIED IN PART**. Within 30 days after entry of this Order, the parties shall file their joint proposed pretrial order in conformity with the instructions articulated herein.

**SO ORDERED** this the 8th day of March 2021.

Steven D. Grimberg
United States District Court Judge